# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

KATHY KELLEHER,

        Plaintiff,

vs.

WAL-MART STORES, INC.,

        Defendant.

No. C14-1002

**RULING ON MOTION FOR SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

I.     *INTRODUCTION* ................................................ 2

II.    *PROCEDURAL HISTORY* ..................................... 2

III.   *RELEVANT FACTS* ........................................... 2
     A.    *The Parties* ............................................ 2
     B.    *Kelleher's Employment History with Wal-Mart* ............. 3
     C.    *Kelleher's Claims* ...................................... 8

IV.   *LEGAL STANDARD FOR SUMMARY JUDGMENT* .............. 9

V.    *DISCUSSION* ............................................... 10
     A.    *Disability Discrimination and Failure to Accommodate* ........ 10
         1.   *Applicable Law* ................................... 10
         2.   *Analysis* ........................................ 13
             a.    *The Parties' Arguments* .................... 13
             b.    *Adverse Employment Action* ................. 14
             c.    *Interactive Process* ........................ 16
     B.    *Harassment* ........................................... 18
         1.   *Applicable Law* ................................... 19
         2.   *Analysis* ........................................ 21
     C.    *Retaliation* ............................................ 22
         1.   *Applicable Law* ................................... 24
         2.   *Analysis* ........................................ 25

VI.   *CONCLUSION* .............................................. 28

VII.  *ORDER* .................................................... 28

# I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 21) filed by Defendant on March 2, 2015, the Resistance (docket number 22) filed by Plaintiff on March 26, and the Reply (docket number 23) filed by Defendant on April 6. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

# II. PROCEDURAL HISTORY

On January 16, 2014, Plaintiff Kathy Kelleher filed a First Amended and Substituted Petition at Law and Demand for Jury Trial in the Iowa District Court for Dubuque County (Case No. 01311 LACV058189).[1]  Kelleher alleged disability discrimination, failure to continue to accommodate, harassment, and retaliation.  On February 7, 2014, Defendant Wal-mart Stores, Inc., filed a Notice of Removal, transferring the case from the Iowa District Court for Dubuque County to the United States District Court for the Northern District of Iowa.  On February 14, 2014, Wal-Mart filed an Answer and Affirmative Defenses, generally denying the material allegations contained in the petition, and asserting certain affirmative defenses.  On February 18, 2014, both parties consented to proceed before a United States Magistrate Judge, pursuant to the provisions set forth in 28 U.S.C. § 636(c).  Trial is scheduled before the undersigned on July 6, 2015.

Wal-Mart timely filed the instant motion for summary judgment on March 2, 2015.

# III. RELEVANT FACTS

## A. The Parties

Wal-Mart Stores, Inc. is a multi-national retail corporation that operates discount department and warehouse stores.  Wal-Mart is headquartered in Bentonville, Arkansas. The company has over 11,000 stores in 27 countries, including 59 Walmart stores in Iowa.

---

[1] Kelleher filed her initial petition and demand for jury trial in state court on December 31, 2013.

Kathy Kelleher is a resident of Dubuque, Iowa. She is an employee of the Dubuque Walmart store.

## B. Kelleher's Employment History with Wal-Mart

Kelleher began working at the Dubuque Walmart store in 1995. She was initially hired as a truck unloader. In 1997, Kelleher changed to a stocker position, working third-shift. Wal-Mart's job description for the "stocker" position states that the following physical activities are "necessary to perform one or more essential function" of the position: (1) visually verify information (often in small print); (2) visually locate merchandise and other objects; (3) read information (often in small print); (4) reach overhead and below the knees, including bending, twisting, pulling, and stooping; (5) move, lift, carry, and place merchandise and supplies weighing less than or equal to 50 pounds without assistance; (6) move up and down a ladder; and (7) grasp, turn, and manipulate objects of varying size and weight, requiring fine motor skills and hand-eye coordination.[2]

Also in 1997, Kelleher was diagnosed with Multiple Sclerosis ("MS"). At the time of her diagnosis, she verbally reported to her work supervisors that her physician imposed a work restriction of no ladder use. Wal-Mart accommodated Kelleher's verbal request from 1997 through 2011.[3]

---

[2] *See* Wal-Mart's Exhibits in Support of Motion for Summary Judgment (docket number 21-4) at 82; Exhibit 9.

[3] In 2009, Kelleher submitted a Request for Accommodation ("RFA"), seeking an extra 15 minute break. Wal-Mart's policy at that time required Kelleher's store to send the RFA to the Market Human Resources Manager ("MHRM") for a decision. The MHRM recommended that the store deny Kelleher's request for lack of proper medical documentation. The MHRM also noted that because Kelleher's physician indicated Kelleher could not work on ladders, reassignment to a different position, not requiring the use of ladders, was recommended. Despite the MHRM's recommendation, store management continued to accommodate Kelleher allowing her to remain a stocker and not
(continued...)

3

In January 2011, Kelleher requested and was granted FMLA leave for an appendectomy. Kelleher's physician provided her a return to work note listing a 10-pound weight lifting restriction, no pulling of pallets, no climbing of ladders, and no lifting overhead.[4] The note also stated that "[t]hese are permanent/medical restrictions."[5] After receiving these restrictions, the Personnel Coordinator at Kelleher's store informed Kelleher that she would be unable to return to her position as a stocker with such permanent work restrictions. Kelleher requested her physician to change the restrictions. Kelleher's physician agreed to Kelleher's request, and provided her with a new note requiring only the following restrictions: "no climbing ladders" and "no working in extreme hot or cold conditions."[6] Initially, after receiving the physician's modified work restrictions, management at Kelleher's store allowed her to return to her position as a stocker without having to use a ladder.

In June 2011, Kelleher submitted another RFA, seeking a second extra 15 minute break. The store granted Kelleher's request. However, Wal-Mart's procedure for determining appropriate employee accommodations was centralized in 2010, and Kelleher's store was required to submit the RFA to the Accommodations Services Center ("ASC") located at Walmart's corporate headquarters in Arkansas. Accompanying Kelleher's RFA, was a doctor's certification from Kelleher's physician. On the certification form, Kelleher's physician opined that Kelleher's major life activities were affected as follows: she (1) can stand for 45 minutes before needing a 3 minute break;

---

[3] (...continued)
use ladders. The store also allowed her to have an extra 15 minute break.

[4] See Wal-Mart's Exhibits in Support of Motion for Summary Judgment (docket number 21-4) at 127; Exhibit 20.

[5] Id.

[6] Id. at 128; Exhibit 21.

4

(2) cannot lift over 10 pounds; (3) cannot lift overhead; (4) cannot walk over 300 feet; (5) cannot climb ladders; and (6) cannot work in temperature extremes.[7] On October 26, 2011, ASC manager Kirk Hancock reviewed Kelleher's RFA and determined that the restrictions from her physician did not allow her to perform the essential functions of her job as a stocker. Specifically, Hancock found that the restrictions on overhead lifting, climbing ladders, and not lifting over 10 pounds, eliminated Kelleher's ability to perform the essential functions of a stocker. Hancock sent a letter to Kelleher's store, dated October 31, 2011, explaining that Kelleher's restrictions do not allow her to perform the essential functions of her current position as a stocker. Hancock indicated that Kelleher should be placed on unpaid personal leave for up to 90 days, while Wal-Mart tried to find a suitable reassignment meeting her work restrictions.

Apparently neither Kelleher, nor management at Kelleher's store, received Hancock's letter, and Kelleher continued to work as a stocker. On January 31, 2012, Hancock sent Kelleher's store another letter stating Wal-Mart was unable to find a suitable open position for Kelleher. Hancock indicated that Kelleher could take FMLA leave or personal leave and apply for open positions within her work restrictions.

Upon receiving Hancock's second letter, Robert Wallace Harding, Kelleher's store manager, instructed Jeri Barnhart, the store's personnel manager, "to go through the job codes and see what would fall in place for [Kelleher] so that we don't have to terminate her. We need to find something that will work out for her."[8] Barnhart and Harding determined that the position of overnight cashier would work best for Kelleher. The physical activities "necessary to perform one or more essential functions" of the overnight cashier position include the ability to: (1) visually verify information (often in small print); (2) visually locate merchandise and other objects; (3) read information (often in small

---

[7] *Id.* at 143; Exhibit 25.

[8] *Id.* at 53; Exhibit 5; Harding's Deposition 17:4-8.

5

print); (4) reach overhead and below the knees, including bending, twisting, pulling, and stooping; (5) move, lift, carry, and place merchandise and supplies weighing less than or equal to 25 pounds without assistance; (6) grasp, turn, and manipulate objects of varying size and weight, requiring fine motor skills and hand-eye coordination; and (7) communicate effectively in person or by using telecommunications equipment.[9] Additionally, the overnight cashier duties were very similar to stocking duties Kelleher had performed for 14 years. Generally, an overnight cashier's duties include more stocking than cashiering. According to Wal-Mart, during third-shift, the Customer Service Manager stays in the front of the store all night long cashiering, and only calls a cashier up to help if the store becomes busy. Otherwise, overnight cashiers are stocking the store.[10]

On February 2, 2012, Harding and Barnhart met with Kelleher, and explained that ASC determined that she could no longer work as a stocker, but they believed she could perform the position of overnight cashier. Kelleher expressed concerns about being placed in the overnight cashier position. Specifically, she was concerned that speech problems and eyesight problems associated with her MS would make it difficult for her to perform

---

[9] *Id.* at 84; Exhibit 10. Management at Kelleher's store focused solely on Kelleher's restriction of no climbing on ladders, and apparently ignored the overhead lifting and 10-pound weight lifting restrictions, which were also identified by Hancock as reasons for Kelleher needing to be reassigned to a new position. Neither party addresses the additional restrictions in their briefs or other documents associated with this litigation. Presumably, Kelleher and Kelleher's store management are relying on Kelleher's physician's second set of restrictions which only included restrictions on "no climbing ladders" and "no working in extreme hot or cold conditions" provided to Kelleher's store management in January 2011. Hancock apparently received the first set of restrictions from Kelleher's physician which also included the overhead lifting and 10-pound weight restrictions.

[10] *See* Wal-Mart's Statement of Facts in Support of Its Motion for Summary Judgment (docket number 21-2) at 14, ¶ 59.

6

the duties of a cashier.[11] Harding and Barnhart assured Kelleher that they believed she could perform the overnight cashier position without problems. They also assured her that the store would have someone working with her until she became comfortable at the job. Kelleher was presented with the job offer on a computer, and she electronically signed the offer, accepting the overnight cashier position.[12]

On March 29, 2012, Kelleher filed a complaint with the Dubuque Human Rights Commission, alleging disability discrimination, failure to accommodate, harassment, and retaliation.[13] After filing her complaint of unlawful discrimination, Kelleher refused to perform any cashier duties. Due to the instant pending litigation, management at Kelleher's store determined that Kelleher should not be required to perform the cashier

---

[11] In her deposition testimony, Kelleher stated that she "begged [Harding], I said please don't do this to me. I said why can't I just, you know, just come in and do my job like I have all these years, and he said you will, but you are going to cashier too, and I said please, you know, I don't want to be up there at all." Kelleher's Appendix (docket number 22-3) at 20, 68:17-22.

[12] Kelleher believes that she had no choice but to electronically sign the job offer because, otherwise, she would have been terminated. *See* Kelleher's Response to Defendant's Statement of Facts in Support of Its Motion for Summary Judgment (docket number 22-1) at 9, ¶ 64; *see also* Kelleher's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 22-2) at 5, ¶ 27 ("Kelleher was presented with two choices: accept another position which she could not perform because of her MS, or be terminated."). Wal-Mart denies that Kelleher would have been terminated if she did not accept the cashier position. *See* Defendant's Response to Plaintiff's Statement of Additional Facts (docket number 23-1) at 6, ¶¶ 13, 27. In his deposition, Harding explained that the cashier position was the best fit for Kelleher, and stated "I didn't say she would be fired or anything like that[.] . . . She's a long-term associate. I would like to try to find something to help her if we could figure something out." Kelleher's Appendix (docket number 22-3) at 58, 25:10-12, 26:5-7.

[13] On April 3, 2012, Kelleher filed her discrimination complaints with the Iowa Civil Rights Commission and EEOC.

7

duties of her position; and instead, allows her to only perform the stocking duties that she performed in her previous 14 years of employment.

### C.  Kelleher's Claims

In her petition, Kelleher alleges disability discrimination, failure to continue to accommodate, harassment, and retaliation.

Kelleher generally asserts that Wal-Mart accommodated her disability for 14 years, by letting her be a stocker, but not requiring her to climb ladders. In 2011, Wal-Mart determined that due to her restriction on climbing ladders, she could no longer continue in the stocker position, and changed her position and job duties. Kelleher believes that the change in her position and job duties constitutes unlawful discrimination on the basis of her disability.[14]

Kelleher also alleges that Wal-Mart discriminated against her on the basis of disability because it refused to continue to accommodate her, by allowing her to be a stocker without ladder use. Specifically, Kelleher asserts that Wal-Mart's denial of her "long-standing accommodations and refusal to continue to accommodate [her] disability constitutes unlawful discrimination."[15]

Kelleher also alleges that she has been harassed by Wal-Mart due to her disability. Specifically, Kelleher claims that management adds to her workload and pushes her, holding her to a higher standard than other employees. Kelleher also asserts that management constantly asks her how much longer it will take for her to finish stocking, or how much stocking she has left to do.

Finally, as to her charge of retaliation, Kelleher claims that Wal-Mart retaliated against her under the ADA, ADAAA, and ICRA for requesting accommodations and filing

---

[14] *See* Kelleher's First Amended and Substituted Petition at Law and Demand for Jury Trial (docket number 2) at 3, ¶ 12.

[15] *Id.* at 4, ¶ 17.

Case 2:14-cv-01002-JSS   Document 24   Filed 04/28/15   Page 8 of 29

discrimination charges by giving her undesirable work assignments and poor performance reviews negatively affecting her rate of pay. Specifically, Kelleher alleges that beginning with her 2011 performance evaluation, Wal-Mart dropped her rating from "exceeds expectations," to a rating of "solid performer." Thus, instead of yearly $.50 raises for an "exceeds expectations" rating, she has only received $.40 raises for her "solid performer" ratings since 2011. From 1998 to 2010, Kelleher's yearly evaluation rating was "exceeds expectations."[16]

## IV. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions,

---

[16] *See* Kelleher's Appendix (docket number 22-3) at 74-102; Exhibit 8 (Kelleher's 1998-2010 performance evaluations).

avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## V. DISCUSSION

In her First Amended and Substituted Petition at Law and Demand for Jury Trial, Kelleher alleges discrimination based on disability in violation of the ICRA, ADA, and ADAAA (Count I), discrimination for failure to continue to accommodate her disability in violation of the ICRA, ADA, and ADAAA (Count II), harassment due to her disability and need for an accommodation in violation of the ICRA, ADA, and ADAAA (Count III), and retaliation in violation of the ICRA, ADA, and ADAAA (Count IV). For a variety of reasons, Wal-Mart asks that all of Kelleher's claims be summarily dismissed.

### A. Disability Discrimination and Failure to Accommodate

### 1. Applicable Law

Kelleher alleges disability discrimination under both the ADA/ADAAA and ICRA. When the parties in disability discrimination litigation "do not dispute the application of federal analysis, disability claims under the ICRA are generally analyzed in accord with the ADA." *Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007) (citing *McElroy v. State*, 703 N.W.2d 385, 391 (Iowa 2005)); *see also Kallail v. Alliant Energy Corporate Services, Inc.*, 691 F.3d 925, 930 (8th Cir. 2012) ("[D]isability claims under the ICRA are generally analyzed in accord with the ADA"). Therefore, the Court will analyze both Kelleher's ADA/ADAAA and ICRA disability discrimination claims using federal law.

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of

10

employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2009).[17] *See also Gretillat*, 481 F.3d at 652. The ADA further prohibits employers from:

> not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. . . .

42 U.S.C. § 12112(b)(5)(A). *See also Peyton v. Fred's Stores of Arkansas, Inc.*, 561 F.3d 900, 902 (8th Cir. 2009). "As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, 'an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.'" *Id.* (quoting 42 U.S.C. § 12111(8)).[18]

A claim of disability discrimination under the ADA may be established either through circumstantial evidence of discrimination or through direct evidence of

---

[17] The ADA was amended by Congress through the enactment of the ADA Amendments Act of 2008 ("ADAAA"), effective January 1, 2009. *See* Pub. L. No. 110-325, § 8, 122 Stat. 3553. The purpose of the amendment was to clarify what qualified as a disability. *Minnihan v. Mediacom Communications Corp.*, 779 F.3d 803, 810 n.3 (8th Cir. 2015). For purposes of Kelleher's claims, the analysis remains the same under the ADA or ADAAA. *Id.*

[18] Under the post-amendment ADA, a "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Brown v. City of Jacksonville*, 711 F.3d 883, 888 (8th Cir. 2013) ("Congress's 2008 amendments to the ADA did not fundamentally change the qualification requirement although they excised the term "with a disability" from the subsection defining a "qualified individual. . . ." To qualify under the post-amendment ADA, an individual must still be able to "perform the essential functions of the employment position" "with or without reasonable accommodation." 42 U.S.C. § 12111(8).").

11

discrimination. *Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1034 (8th Cir. 2007). Kelleher presents no direct evidence of discrimination, and in absence of such evidence, courts generally analyze ADA claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lors v. Dean*, 595 F.3d 831, 834 (8th Cir. 2010). However, if a plaintiff makes a reasonable accommodation claim, courts do not apply the *McDonnell Douglas* framework, but instead apply a modified burden-shifting analysis. *Fenney v. Dakota, Minnesota & Eastern Railroad Co.*, 327 F.3d 707, 711-12 (8th Cir. 2003).

In her petition, Kelleher alleges generally that:

> Defendant accommodated Plaintiff's physical disability and Plaintiff continued to work her job as a stocker with Defendant until some time in 2011, when Defendant denied Plaintiff's long-standing accommodations, refused to continue to accommodate Plaintiff in the same fashion it had for the past fourteen (14) years, and changed Plaintiff's position and job duties.

Kelleher's First Amended and Substituted Petition at Law and Demand for Jury Trial (docket number 2) at 2, ¶ 10. More specifically, in count one of her petition, Kelleher alleges disability discrimination due to Wal-Mart's failure to continue to accommodate her disability. *Id.* at 3, ¶ 15. That is, Kelleher does not allege disparate treatment due to her disability.[19] Similarly, in count two of her petition, Kelleher asserts that Wal-Mart's "denial of Plaintiff's long-standing accommodations and refusal to continue to accommodate Plaintiff's disability constitutes unlawful discrimination. *Id.* at 4, ¶ 17. It is clear from her petition that Kelleher, in both count one and count two, is making a

---

[19] *See Fenney*, 327 F.3d at 711-12 ("If a party alleges a claim of discriminatory disparate treatment, then the traditional burden-shifting framework of McDonnell Douglas will apply. . . . However, if a party makes a reasonable accommodation claim, then we apply a modified burden-shifting analysis.") (Citations omitted).

Case 2:14-cv-01002-JSS   Document 24   Filed 04/28/15   Page 12 of 29

reasonable accommodation claim. Therefore, the Court will apply the modified burden-shifting analysis to these claims.

Under the modified burden-shifting approach:

> [T]he employee "must first make a facial showing that he has an ADA disability and that he has suffered an adverse employment action. Then he must make a facial showing that he is a 'qualified individual.'" "To be a 'qualified individual' within the meaning of the ADA, and employee must '(1) possess the requisite skill, education, experience, and training for his position, and (2) be able to perform the essential job functions, with or without reasonable accommodation.'" In cases where the employee claims that he is able to perform the essential functions of the job with reasonable accommodation, the employee "must only make a 'facial showing that a reasonable accommodation is possible.'" When the employee has made that facial showing "the burden then shifts to the employer to show that it is unable to accommodate the employee."

*Brannon v. Luco Mop Co.*, 521 F.3d 843, 848 (8th Cir. 2008) (quotations and citations omitted). "'If the employer can show that the employee cannot perform the essential functions of the job even with reasonable accommodation, then the employee must rebut that showing with evidence of his individual capabilities.'" *Fenney*, 327 F.3d at 712 (quotation omitted). "'At that point, the employee's burden merges with his ultimate burden of persuading the trier of fact that he has suffered unlawful discrimination.'" *Id.*

### 2. Analysis

#### a. The Parties' Arguments

Wal-Mart does not dispute that Kelleher suffers from a disability covered by the ADA, ADAAA, and ICRA. Wal-Mart asserts, however, that Kelleher did not suffer an adverse employment action. Specifically, Wal-Mart argues:

> First, Wal-Mart has granted Kelleher intermittent leave whenever she needs it for the past 13 years. Second, Wal-Mart has not issued discipline or documented Coachings to

> Kelleher for at least 15 years. Finally, the Store informally
> accommodated her for years and when policy changed, the
> Store created a job opening just for her and offered it to her
> along with a pay increase. Wal-Mart has not taken any
> adverse action against Kelleher[.]

Walmart's Brief in Support of Its Motion for Summary Judgment (docket number 21-1)
at 5.

Kelleher responds that whether she suffered an adverse employment action is, at a
minimum, a question of fact. Specifically, Kelleher contends that she:

> testified that Wal-Mart forced her to either accept a position as
> a cashier or lose her job, despite informing store manager
> Robert Harding and store human resources manage Jeri
> Barnhart that she could not perform that role because of her
> disability. Kelleher's pay ultimately decreased as a result of
> being forced to accept the cashier position, and job
> responsibilities were added.

Kelleher's Brief in Resistance to Defendant's Motion for Summary Judgment (docket
number 22) at 12-13.

In its reply brief, Wal-Mart contends that Kelleher's assertions that (1) she could
not perform the cashier position, and (2) her pay decreased, are both unsupported by the
evidence in record. Specifically, Wal-Mart maintains that:

> First, Kelleher never presented any medical documentation
> indicating that she has limitations preventing her from
> cashiering. . . . Second, her pay did not decrease because she
> received a $.20 raise as a cashier and her evaluations resulted
> in a $.40 raise each year.

Walmart's Reply Brief in Support of Its Motion for Summary Judgment (docket number
23) at 2.

### b. *Adverse Employment Action*

In *Fenney*, the Eighth Circuit Court of Appeals stated that "[a]n adverse
employment action is one that causes a material change in the terms or conditions of

14

employment." 327 F.3d at 716 (citation omitted). The Eighth Circuit further explained that:

> To be "adverse," the action "need not always involve termination or even a decrease in benefits or pay." *Phillips v. Collings*, 256 F.3d 843, 847 (8th Cir. 2001). However, "not everything that makes an employee unhappy is an actionable adverse action." *Montandon v. Farmland Industries, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997) (discussing an unlawful retaliation claim in the context of Title VII) (citations omitted). Thus, "a transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working[] conditions with no reduction in pay or benefits." *Brown* [*v. Cox*], 286 F.3d at 1045 (citing *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997)).

*Id*. at 717.

Here, upon requesting an accommodation for an extra 15-minute break — which Wal-Mart granted — Wal-Mart's Accommodation Services Center ("ASC") learned that Kelleher was restricted from climbing ladders, a requirement of the stocker position. Prior to Wal-Mart's centralization of accommodation determinations at the ASC, individual stores made accommodation determinations. In Kelleher's case, the store allowed her to be a stocker without requiring her to climb ladders. ASC, however, would no longer allow that accommodation for a stocker and required Kelleher's store to find a suitable position to reassign Kelleher. Store management determined that the position of overnight cashier would work best for Kelleher.

When presented with the position reassignment, Kelleher accepted the overnight cashier position when it was offered to her. She electronically signed an offer sheet presented to her on a computer, and accepted the new position. Whether Kelleher felt that she had to take the cashier position or be terminated (an assertion Wal-Mart denies), the simple fact is Kelleher accepted the position and did not experience an adverse employment action. Accepting the cashier position did not materially change the terms or conditions

15

of her employment. In the cashier position, Kelleher continued to enjoy her accommodation of two extra 15 minute breaks, and she was not required to climb ladders. Her pay increased. The base pay rate for a cashier is $.20 higher than the base pay rate for a stocker.[20] Moreover, as an overnight cashier, her primary duties continued to be stocking the store. Her additional cashier duty was only necessary if the store was busy and an extra cashier was needed.

Therefore, the Court concludes that Kelleher has failed to produce evidence that she suffered an adverse employment action. *See Fenney*, 327 F.3d at 716 ("An adverse employment action is one that causes a material change in the terms or conditions of employment."); *Brown v. Cox*, 286 F.3d 1040, 1045 (8th Cir. 2002) ("[A] transfer from one job to another is not an adverse employment action if it involves only minor changes in the employee's working conditions with no reduction in pay or benefits."). Because Kelleher has failed to produce evidence that she suffered an adverse employment action, she has not established a *prima facie* case of disability discrimination for failure to accommodate her disability.[21] Accordingly, Wal-Mart is entitled summary judgment on Kelleher's disability discrimination claim and failure to accommodate claim.

### c. *Interactive Process*

Furthermore, even if Kelleher could establish that she suffered an adverse employment action, Wal-Mart met its duty to engage in the interactive process with

---

[20] *See* Walmart's Statement of Facts in Support of Its Motion for Summary Judgment (docket number 21-2) at 16, ¶ 67. Furthermore, in her deposition, Kelleher admitted that cashiers earn more than stockers. *See* Wal-Mart's Exhibits in Support of Summary Judgment (docket number 21-3) at 15; Exhibit 1, Kelleher's Deposition 71:9-13, 72:4-5.

[21] The Court finds no merit to Kelleher's claim that she cannot perform the duties of an overnight cashier due to her disability. Kelleher presents no evidence or medical documentation to support her contention that she is unable to perform the duties of a cashier due to her disability. *See Reasonover*, 447 F.3d at 578 ("Evidence, not contentions, avoids summary judgment.").

Case 2:14-cv-01002-JSS   Document 24   Filed 04/28/15   Page 16 of 29

Kelleher in a good faith effort to accommodate her disability. *See E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014) ("In order to determine whether an accommodation is necessary, and if so, what that accommodation may be, the employer and employee must engage in the 'interactive process.'"). In order to show that an employer failed to participate in the interactive process, the plaintiff must show:

> 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Id.* (quoting *Peyton*, 561 F.3d at 902).

Here, Wal-Mart knew about Kelleher's disability. Kelleher requested an extra 15-minute break as an additional accommodation. Kelleher also requested Walmart continue its previously granted accommodation of no ladder use. Wal-Mart granted Kelleher's request for the extra 15-minute break, but due to policy changes sought to accommodate her restriction on ladder use by offering her reassignment to an overnight cashier position.[22] Kelleher works third-shift at Walmart, and an overnight cashier's primary duties include stocking the store without needing to use a ladder. In the event the store was busy, Kelleher could be called to the front to perform cashier duties. Kelleher accepted this reassignment to the overnight cashier position. The Court concludes that Kelleher has failed to show that Wal-Mart did not make a good faith effort to assist her in seeking an accommodation. *See id.* Therefore, Kelleher's claim for failure to accommodate by not engaging in the interactive process is without merit.

---

[22] Wal-Mart's ASC determined that due to her restriction on climbing ladders, Kelleher could not perform the duties of a stocker, which require ladder use.

### B. Harassment

In her petition, Kelleher alleges that "Plaintiff has repeatedly and consistently been harassed, ostracized and chastised by her supervisors and members of Defendant's Dubuque store management team regarding her disability and need for accommodation."[23] In her Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment, Kelleher states:

> After Kelleher submitted a written accommodation request in 2011, store management began harassing Kelleher by adding to her workload, forcing her to work alone, giving her assignments that are difficult, rolling their eyes at her and holding her to a higher standard than other employees.

*Id.* at 4-5, ¶ 23. In support of her statement, Kelleher refers to her deposition testimony:

> Q:   . . . I am wanting to get at or if you can tell me what ways you are claiming management at Dubuque harassed, ostracized and chastised you due to your disability?
>
> A:   What is hard about that is not going to say you are disabled, you are the problem because of that. Like I told you, they add to my workload, they, you know, have me -- last night I had four pallets of cereal, there were three people in the aisles around me and in each aisle. I had no help, nothing.
> See, it is the push. They know it is harder on me and they do it, and I can't stop it and you are right, I don't write a letter and say you did this, you did that because I don't -- I just want to do my job and I don't want to be singled out --
>
> Q:   Okay.
>
> A:   -- but as far as I can't put it in words, I can't go oh, he was over there saying, you know, you have got MS, you know, I can't say that. I can only tell you what I feel and how they look at me, how they act with me,

---

[23] Kelleher's First Amended and Substituted Petition at Law and Demand for Jury Trial (docket number 2) at 6, ¶ 22.

you know. Like I told you, standard set this high for
me, for everybody else it is here. Why is it up there,
you know. I don't understand. I don't understand any
of this, I really don't.

I just -- I don't know why they are doing it. I feel it.
Maybe I will go home and think about it, you know,
because my brain doesn't work right a lot, you know,
I can give you a better answer, but I worked all night
last night with that feeling like, you know, I can't -- I
can't explain it. It is just really tough. . . .

Q:     Okay. Any other ways besides what you just described
       you feel you have been harassed, ostracized or
       chastised due to your disability or accommodation?

A:     I always feel like I am a bother, they avoid me, you
       know, don't -- they don't acknowledge that I have
       worked there, just put me to the back. I don't exist and
       then they don't have to look at me hobbling, you know,
       they give me looks when I am walking by.

Q:     When you say they, who do you mean?

A:     Kelly [Stevenson, one of Kelleher's supervisors],
       comanager Mike[.] . . . Kelly will tell me, you know,
       take that pallet back and then have to slow down
       because how I walk, and she makes it more than
       obvious that that is putting her out, that I am -- I am a
       liability, you know, I am -- I am just -- she has to wait
       while I walk, she has to tell me to do something that is
       going to take me longer, not that I am not capable. . . .

Q:     You said she makes that obvious. How does she make
       that obvious?

A:     By stopping, by rolling her eyes, but looking around to
       find somebody else to talk to -- like she is trying to kill
       the time while she is waiting for me to catch up.

Kelleher's Appendix (docket number 22-3) at 32-35; Exhibit 3, Kelleher's Deposition
118:8-119:17, 119:23-120:18, 121:1-6.

### 1.     *Applicable Law*

In order to establish a claim of harassment or hostile work environment, a plaintiff
must show: "(1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to

unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment." *Gordon v. Shafer Contracting Co., Inc.*, 469 F.3d 1191, 1194-95 (8th Cir. 2006). *See also Farmland Foods, Inc. v. Dubuque Human Rights Com'n*, 672 N.W.2d 733, 744 (Iowa 2003).

The Eighth Circuit Court of Appeals has described the harassment standards as "demanding." *Arraleh v. County of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (quoting *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1038 (8th Cir. 2005)).

> A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the condition of the victim's employment and create an abusive working environment. Relevant factors for determining whether conduct rises to the level of harassment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

*Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1018 (8th Cir. 2011) (internal quotations and citations omitted).

"To survive summary judgment, a plaintiff must present evidence from which a reasonable jury could conclude that the harassment was sufficiently 'severe or pervasive' to affect a term, condition, or privilege of the plaintiff's employment." *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074, 1077 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). It is not the purpose of the harassment statutes "to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight." *Id.* The Court has "repeatedly emphasized that anti-discrimination laws do not

create a general civility code." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 779 (8th Cir. 2012) (quoting *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 721 (8th Cir. 2003)).

### 2.    Analysis

Here, Kelleher alleges that store management harassed her "by adding to her workload, forcing her to work alone, giving her assignments that are difficult, rolling their eyes at her and holding her to a higher standard than other employees."[24]    In her deposition, Kelleher generally claims that store management added to her workload and other store employees did not help her with the alleged increased workloads.[25]    Other than stating she had four pallets one night, Kelleher offers no examples or evidence of an increased work load.    *See Reasonover*, 447 F.3d at 578 ("Evidence, not contentions, avoids summary judgment."). Kelleher also stated in her deposition she feels that store management holds her to a higher standard than other employees.[26]    Again, Kelleher offers no examples or evidence of how she is held to a higher standard than other employees at her store. *See id*. Kelleher also testified in her deposition that supervisors and other employees give her "looks" because she walks slowly due to her disability.[27] Lastly, in her deposition, Kelleher described how one of her supervisors rolls her eyes when she is working at a slow pace.[28]    The Court does not find random "looks" and alleged eye rolls to rise to the level necessary for a harassing/hostile work environment. *See Pye*, 641 F.3d at 1018 ("A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe

---

[24] Kelleher's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 22-2) at 4-5, ¶ 23.

[25] *See* Kelleher's Appendix (docket number 22-3) at 32; 118:15-19.

[26] *Id*. at 33; 119:4-8.

[27] *Id*. at 34; 120:5-7.

[28] *Id*. at 35; 121:3-6.

21

or pervasive to alter the condition of the victim's employment and create an abusive working environment."); *Powell*, 445 F.3d at 1077 (It is not the purpose of the harassment statutes "to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight.").

Viewing the record in the light most favorable to Kelleher, the Court finds that Kelleher's allegations generally constitute infrequent discriminatory conduct, with low-levels of severity, which were not physically threatening, and did not interfere with her work performance. *Pye*, 641 F.3d at 1018. Thus, the alleged harassment was not severe enough to affect the terms, conditions, or privileges of his employment. *See Powell*, 445 F.3d at 1077. Accordingly, the Court concludes Wal-Mart is entitled to summary judgment on Kelleher's harassment claim.

### C. Retaliation

In her petition, Kelleher alleges that:

> After seeking continued accommodations for her disability, contesting Defendant's refusal to continue to accommodate her disability, and pursuing her rights under the Iowa Civil Rights Act of 1965, the Americans with Disabilities Act, and the Americans with Disabilities Act Amendments Act of 2008, as amended, Plaintiff has received poor performance reviews (which have negatively affected her rate of pay)[,] has been given undesirable work assignments, has been harassed and chastised about her disability by Defendant's management, and has had her job duties and responsibilities changed.

Kelleher's First Amended and Substituted Petition at Law and Demand for Jury Trial (docket number 2) at 7, ¶ 27.

In support of her contentions, Kelleher points out that from 1998 to 2010 her annual performance evaluations were rated at "Exceeds Expectations."[29] On August 4, 2011,

---

[29] *See* Kelleher's Appendix (docket number 22-3) at 74-102; Exhibit 8 (Kelleher's 1998-2010 performance evaluations).

however, after submitting a written request for accommodation dated June 15, 2011, Kelleher received a "Solid Performer" rating on her annual evaluation, a lower rating than "Exceeds Expectations."[30] She continued to receive "Solid Performer" ratings in 2012 and 2013.[31] As a result of the lower annual review ratings, Kelleher's annual raises decreased by $.10. In other words, instead of yearly $.50 raises for an "Exceeds Expectations" rating, she received $.40 raises as a "Solid Performer." Furthermore, according to Kelleher, about four months after she submitted a written request for accommodation of an extra 15 minute break, she learned that she could no longer work as a stocker. Kelleher claims that she was not informed earlier that her accommodation request was denied and Wal-Mart was looking for another position for her.[32] Instead, Kelleher asserts that she was presented with two choices: accept a new position as a cashier, or lose her job.[33] Kelleher claims that she is unable to perform the duties required of a cashier due to her disability.[34] Kelleher concludes that Wal-Mart retaliated against her for seeking an accommodation and filing charges of discrimination. Thus, Kelleher argues that Wal-Mart's motion for summary judgment on the issue of retaliation should be denied.

---

[30] *See* Wal-Mart's Exhibits in Support of Motion for Summary Judgment (docket number 21-4) at 87; Exhibit 11.

[31] *Id.* at 90-97; Exhibit 12 (Kelleher's 2012 and 2013 annual performance evaluations).

[32] Kelleher's Statement of Additional Material Facts in Resistance to Defendant's Motion for Summary Judgment (docket number 22-2) at 5, ¶ 26.

[33] *Id.*, ¶ 27.

[34] *Id.* In her deposition, Kelleher vaguely mentions that she could not perform the duties of cashier because of speech and eyesight problems associated with MS. *See* Kelleher's Appendix (docket number 22-3) at 19; 67:22-25. Kelleher offers no additional evidence or medical records to support her claim that she cannot perform the duties of an overnight cashier due to her disability.

### 1. *Applicable Law*

The ADA prohibits employers from "discriminating against any individual because that individual 'has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.'" *E.E.O.C v. Product Fabricators, Inc.*, 763 F.3d 963, 972 (8th Cir. 2014) (quoting 42 U.S.C. § 12203(a)). Similarly, the ICRA makes it a discriminatory practice for any person to retaliate against another person "because such person has lawfully opposed any practice forbidden under this chapter, obeys the provisions of this chapter, or has filed a complaint, testified, or assisted in any proceeding under this chapter." Iowa Code § 216.11(2).

Without direct evidence of a retaliatory motive, courts analyze retaliation claims (whether under Title VII, the ADA, or the ADEA) under the burden-shifting framework of *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007). Using the analytical construct of *McDonnell Douglas*, the initial burden is on the plaintiff to establish a *prima facie* case of retaliation. *Id.* at 1043. In order to establish unlawful retaliation under the ADA, the plaintiff must show that: "(1) she engaged in a statutorily protected activity, (2) the employer took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013) (citing *Amir v. St. Louis University*, 184 F.3d 1017, 1025 (8th Cir. 1999)). *Accord Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 678 (Iowa 2004) (enumerating the elements necessary to establish a *prima facie* case of retaliation under the ICRA).

If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to show a "non-retaliatory reason for the adverse employment action." *Stewart*, 481 F.3d at 1043. If the defendant can show a legitimate, non-retaliatory reason for its actions, then the burden returns to the plaintiff to present evidence that "(1) creates a question of fact

24

as to whether defendant's reason was pretextual and (2) creates a reasonable inference that defendant acted in retaliation." *Id.* (quoting *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005)).

## 2.   *Analysis*

Here, Wal-Mart argues that Kelleher has failed to establish a *prima facie* case of retaliation. Specifically, Wal-Mart argues that Kelleher cannot show that an adverse employment action was taken against her, or that a causal connection exists between any adverse action and the protected activity.

In her brief, Kelleher responds that:

> adverse employment action was taken by Wal-Mart when it forced Kelleher to accept a cashier position that she could not successfully perform. Given Kelleher's physical limitations, a question of fact exists whether placing her in the cashier position could significantly affect Kelleher's future career prospects, as she was forced to move from a position she performed successfully to a position she could not perform successfully. Further, adverse employment action was taken by Wal-Mart when it lowered Kelleher's rating from Exceeds Expectations -- the rating Kelleher received for the twelve prior years -- to Solid Performer. Kelleher's written request for accommodation is dated June 15, 2011. On August 4, 2011, Kelleher received the Solid Performer rating. . . . Wal-Mart lowered Kelleher's rating on the first annual evaluation Kelleher received after she requested an accommodation. At a minimum, a question of fact exists whether Wal-Mart retaliated against Kelleher when it lowered her from an Exceeds Expectations associate to a Solid Performer associate less than two months after Kelleher submitted a request for accommodation, particularly since Kelleher had been an Exceeds Expectations associate from 1998 to 2010.

Kelleher's Brief in Resistance to Defendant's Motion for Summary Judgment (docket number 22) at 18-19.

First, Kelleher's assertion that she was "forced . . . to accept a cashier position that she could not successfully perform" is not supported by the evidence in the record. While Kelleher contends that speech problems and eyesight problems associated with her MS make it impossible for her to perform the duties of a cashier, there is no additional evidence, such as medical records or a note from her physician, to support her claim that she cannot perform the duties of a cashier due to her disability. *See Reasonover*, 447 F.3d at 578 ("Evidence, not contentions, avoids summary judgment.").

Second, as to her vague claim of undesirable work assignments for stocking, Kelleher admitted in her deposition that she generally works in toys, domestic, furniture, and cereal, and is "absolutely" able to stock all of those departments.[35] "To constitute an adverse employment action, the employer's decision must effect a material change in the terms and conditions of employment." *Hughes v. Stottlemyre*, 454 F.3d 791, 796 (8th Cir. 2006) (citing *Bechtel v. City of Benton*, 250 F.3d 1157, 1162 (8th Cir. 2001)). In *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir. 2000), the Eighth Circuit Court of Appeals elaborated on what constitutes an adverse employment action in the retaliation context. The Eighth Circuit explained:

> An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage. *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999). Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, *see Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016 (8th Cir. 1999), but minor changes in working conditions that merely inconvenience an employee or alter an employee's work

---

[35] *See* Defendant's Exhibits in Support of Motion for Summary Judgment (docket number 21-4) at 7; Exhibit 1, Kelleher's Deposition at 44:7-12. Kelleher also admitted that she has some difficulty with the top shelf of cereal, but is capable of stocking it. *Id.*; Kelleher's Deposition at 44:12-22.

> responsibilities do not, *see Ledergerber v. Stangler*, 122 F.3d
> 1142, 1144 (8th Cir. 1997).

*Id.* By her own testimony, Kelleher's claim of undesirable work assignments did not effect a material change in the terms and conditions of her employment. *See Hughes*, 454 F.3d at 796. Minor changes in working conditions that merely inconvenience an employee do not constitute adverse employment actions. *See Spears*, 210 F.3d at 853.

Similarly, Wal-Mart asserts that Kelleher's performance evaluation ratings changing from "exceeds expectations" to "solid performer" were not adverse because they did not result in a material change in the condition of her employment. In *Spears*, the Eighth Circuit addressed unfavorable performance ratings. "A poor performance rating does not in itself constitute an adverse employment action because it has no tangible effect upon the recipient's employment." 210 F.3d at 854 (citation omitted). An unfavorable performance evaluation "is actionable only where the employer subsequently uses the evaluation as a basis to detrimentally alter the terms or conditions of the recipient's employment." *Id*. Wal-Mart asserts that Kelleher's rating change in 2011 was the result of timeliness issues reported in her 2009 and 2010 evaluations which were not improved, as she continued to have the same timeliness issues in 2011. Moreover, when Wal-Mart switched Kelleher from the stocker position to the cashier position, Kelleher's base pay rose $.20 cents. The $.10 cent difference in pay increases between an "exceeds expectations" rating and a "solid performer" rating is minimal, and does not "effect a material change in the terms and conditions of employment." *Hughes*, 454 F.3d at 796.

Finally, and most significantly, after filing her charge of discrimination, instead of retaliating against her, Wal-Mart allowed Kelleher to return to working only as a stocker, not as a cashier, during the pendency of her discrimination claim.[36] Being reassigned to

---

[36] *See* Defendant's Exhibits in Support of Motion for Summary Judgment (docket number 21-4) at 56; Exhibit 5; Harding's Deposition 27:4-7 (providing that Kelleher be
(continued...)

work as an overnight cashier, and not being allowed to work as a stocker, is the primary complaint of Kelleher's charges of discrimination, including her claim for retaliation. Therefore, the Court finds that Kelleher's less favorable performance evaluations do not constitute adverse employment actions because Wal-Mart did not use the evaluations to detrimentally alter the terms or conditions of her employment. Moreover, by allowing Kelleher to work as a stocker instead of an overnight cashier during the pendency of this litigation, Wal-Mart has not retaliated against her for seeking an accommodation or filing a charge of discrimination. *Spears*, 210 F.3d at 854.

Because Kelleher has failed to produce evidence that she suffered an adverse employment action, it necessarily follows that she cannot show a causal connection between the protected activity and adverse employment action. Therefore, Kelleher has not established a *prima facie* case of retaliation, and Wal-Mart is entitled to summary judgment on Kelleher's retaliation claim.

## VI. CONCLUSION

The Court concludes that Defendant Wal-Mart Stores, Inc. is entitled to summary judgment on all of Kelleher's claims.

## VII. ORDER

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1.     The Motion for Summary Judgment (docket number 21) filed by Defendant is **GRANTED**.

2.     The First Amended and Substituted Petition at Law and Demand for Jury Trial filed by Plaintiff is **DISMISSED**.

---

[36](...continued)
allowed not to cashier while her discrimination case is pending). *See also* Kelleher's Response to Defendant's Statement of Facts in Support of Its Motion for Summary Judgment (docket number 22-1) at 11, ¶ 71 ("Robert Harding stated that Kelleher was no longer called to cashier because it was the subject of a pending claim.").

28

3.    This case is **CLOSED**.

DATED this 28ᵗʰ day of ___April___, 2015.

_____

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA